William WELCH and Valerie Welch by Charles J. Richards, their Guardian ad Litem, Debra Welch and Clarence Welch, Plaintiffs-Respondents-Petitioners,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

Supreme Court

*No. 83–1188. Argued October 29, 1984.—*
*Decided January 31, 1985.*

(Also reported in 361 N.W.2d 680.)

For the plaintiffs-respondents-petitioners there was a brief by *Charles J. Richards* and *Phillips, Richards, Lepp, Mayew & Kluka, S.C.*, Kenosha, and oral argument by *Charles J. Richards*.

For the defendant-appellant there was a brief by *Russell M. Ware, Virginia M. Antoine* and *Schoone, McManus, Hankel, Ware & Fortune, S.C.*, Racine, and oral argument by *Ms. Antoine*.

Amicus curiae brief was filed by *William C. Gleisner III, David L. Nichols* and *Weiss, Steuer, Berzowski, Brady & Donahue*, Milwaukee, for the Wisconsin Academy of Trial Lawyers.

WILLIAM A. BABLITCH, J.   Petitioners seek review of a decision of the court of appeals which held that State Farm Mutual Automobile Insurance Company (State Farm) can lawfully exclude coverage in the uninsured motorist provision of its policy for accidents involving motor vehicles owned by the insured but not included in the policy.  In reaching this result, the court of appeals sanctioned the use of a "drive other car" exclusionary clause, which had the effect of validating State Farm's attempt to prevent the insured's stacking of policy coverages.  We hold, consistent with *Tahtinen v. MSI Insurance Company*, decided on this date, that the legislature, in enacting Wisconsin's stacking statute, voided reducing clauses which attempt to prohibit the stacking of multiple policy coverages of uninsured motorist protection issued by the same insurer to the same insured.  The "drive other car" exclusionary clause is such an attempt, and accordingly, we reverse.

This action arises out of an automobile accident which occurred on May 10, 1981. Clarence Welch, his wife Debra Welch, and their two minor children William Welch and Valerie Welch were seriously injured in a head-on collision with William Logan, an uninsured motorist.

At the time of the accident, Mr. Welch was insured under two separate policies issued by State Farm. The first policy, covering Mr. Welch's 1968 Rambler, the automobile involved in the accident, provided standard uninsured motorist coverage with limitations of $50,000 for each person injured and $100,000 for all injuries arising out of one accident. The second policy, covering Mr. Welch's 1978 Chevrolet truck provided identical uninsured motorist coverage.

State Farm paid its policy limits of $100,000 under the uninsured motorist coverage of the policy covering the 1968 Rambler. Fifty thousand dollars was paid to Debra Welch, $20,000 was paid to Valerie Welch and $15,000 was paid to both Clarence and William Welch. The Welches contended that the damages they sustained exceeded this amount, and that these excess damages should be covered by the uninsured motorist provisions contained in the policy covering the 1978 Chevrolet truck. State Farm refused to provide additional payments under this policy.

The Welches brought suit for declaratory judgment asking the trial court to determine that the uninsured motorist coverage in the policy covering the Chevrolet truck be applied to the injuries they sustained in the collision. State Farm answered, alleging that the policy terms covering the truck excluded from uninsured motorist coverage any bodily injury an insured sustains while occupying a motor vehicle owned by the insured or a resident of the same household if such vehicle was not the motor vehicle set forth in the policy. The policy exclu-

sion, which has been termed a "drive other car" exclusion, provides in pertinent part:

"EXCLUSIONS—SECTION III
"This insurance does not apply:
"...
"(b) To bodily injury to an insured while occupying or through being struck by a land motor vehicle owned by the named insured or any resident of the same household, if such vehicle is not an owned motor vehicle: ...."

The policy also provides that an "owned motor vehicle means the motor vehicle ... described in the declarations...."

On May 12, 1983, the circuit court for Kenosha county granted the Welches' motion for declaratory judgment. The court held that the "drive other car" exclusion violated public policy and was inequitable.

State Farm appealed this decision to the court of appeals. In an unpublished opinion, the court of appeals held that because the language in State Farm's policy covering the Chevrolet truck clearly excluded uninsured motorist coverage when Mr. Welch or his family were riding in their 1968 Rambler, the circuit court's declaratory judgment must be reversed. The court of appeals relied on this court's decision in *Roe v. Larson,* 99 Wis. 2d 332, 298 N.W.2d 580 (1980), and *Vidmar v. American Family Mut. Ins. Co.,* 104 Wis. 2d 360, 312 N.W.2d 129 (1981), in order to conclude that exclusionary clauses, similar to the one presently before this court, provide a valid means for insurers to preclude recovery. The Welches subsequently filed a petition for review which was granted by this court.

The sole issue for review is whether an insurance company which issues two or more insurance policies to the same insured may lawfully include a policy provision in

the uninsured motorist section of its policy which excludes coverage for accidents involving motor vehicles owned by the insured but not included in the policy. We hold that they can not. This "drive other car" exclusion serves to prohibit stacking of uninsured motorist benefits against the same insurer, and is therefore prohibited by sec. 631.43(1), Stats. As we stated in *Tahtinen v. MSI Insurance Company*, released on this date, this statute clearly and unambiguously voids reducing clauses which attempt to prevent stacking of uninsured motorist benefits.

In *Tahtinen*, the insured was insured under three separate automobile policies issued by MSI Insurance Company at the time he was struck by an uninsured motorist. Tahtinen made a claim for benefits under each of the policy's uninsured motorist coverage provisions. MSI limited its compensation for uninsured motorist benefits to the policy which had insured the automobile Tahtinen had been driving immediately prior to the accident. It maintained that its liability was limited to the policy limit of one policy because each of the policies contained the following provision, which MSI claimed prohibited stacking of coverage:

"3. Other Automobile Insurance in the Company: With respect to any occurrence, accident, or loss to which this and any other automobile insurance policy issued to the named insured by the Company also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability under any one such policy." *Tahtinen v. MSI Insurance Company*, 122 Wis. 2d 158, 161, 361 N.W.2d 674 (1985).

We held that the legislature, in enacting sec. 631.43 (1), Stats., clearly and unambiguously voided reducing clauses which attempt to prevent stacking of uninsured motorist protection. *Tahtinen v. MSI Insurance Company, supra,* p. 162. Section 631.43(1) provides:

"Other insurance provisions. (1) General. When 2 or more policies promise to indemnify an insured against the same loss, no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no 'other insurance' provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured."

Thus, the legislature mandated that insurers were not permitted to relieve themselves of liability in a situation where an insured had other uninsured motorist coverage available to him or her when that coverage by itself was insufficient to indemnify the insured to the full extent of his or her loss up to the available policy limits. Thus, we held in *Tahtinen* that "other automobile insurance in the company" reducing clauses were violative of the legislative directive contained in sec. 631.43 (1), Stats., which was to provide the insured indemnification to the full extent of his or her loss up to the aggregated policy limits of his or her coverage. *Tahtinen v. MSI Insurance Company, supra,* pp. 168, 169.

Upon examination, we perceive no difference in principle or application between the "other automobile insurance in the company" reducing clause, invalidated in *Tahtinen,* and the "drive other car" exclusion presently before this court. *Accord Grange Mut. Cas. Co. v. Volkmann,* 374 N.E.2d 1258, 1261 (Ohio 1978); *Bradley v. Mid-Century Ins. Co.,* 294 N.W.2d 141, 147 (Mich. 1980) (citing *Boettner v. State Farm Mutual Ins. Co.,* 201 N.W.2d 795, 798 (Mich. 1972)). Both the "drive other car" reducing clause and the "other automobile insurance in the company" reducing clause serve the same

purpose: both clauses are an attempt to avoid the statutory prohibition of reducing clauses. *Bradley* at 147. The legislature clearly indicated its intent to invalidate attempts by insurers to avoid their statutory obligations to compensate the insured up to the aggregated policy limits of the insured's coverage by enacting the stacking doctrine. *Tahtinen v. MSI Insurance Company, supra,* p. 163; *Landvatter v. Globe Security Ins. Co.,* 100 Wis. 2d 21, 26, 300 N.W.2d 875 (Ct. App. 1980). State Farm's inclusion of a "drive other car" exclusionary clause is such an attempt, and must therefore be invalidated.

We conclude that State Farm is liable to the Welch family under both policies of uninsured motorist coverage it issued. The extent of the insurance company's liability and payment is governed by the damages sustained, consistent with the provisions of sec. 631.43(1), Stats., up to the aggregated policy limits of the insured's coverage. Pursuant to this statute, the Welches are entitled to stack coverage under each of the policies, to the full amount of their damages, to the extent their damages do not exceed the aggregated policy limits of their uninsured motorist coverage. *Accord Roberie v. State Farm Mutual Automobile Ins. Co.,* 291 So. 2d 923, 924–25, (La. 1974); *Grange Mut. Cas. Co.* at 1261; *cf. State Farm Mut. Auto. Ins. Co. v. Wimpee,* 376 So. 2d 20 (Ct. App. Fla. 1979).

State Farm argues, and the court of appeals agreed, that this court upheld the validity of a "drive other car" exclusionary clause, similar to the one at issue here, in *Roe* and that *Roe* is controlling. Although *Roe* is easily distinguishable on other grounds from the case presently before us, and although the *Roe* opinion has limited validity due to its reliance on statutory language which is no longer applicable,[1] we believe that the better approach is

[1] The *Roe* majority relied heavily on the existence of the word "thereunder" in the uninsured motorist statute in support of his

to over-rule the *Roe* opinion, and that part of the *Vidmar* opinion which reasserts *Roe*, altogether. We reach this conclusion because *Roe* mischaracterized the nature of uninsured motorist coverage. We conclude, contrary to the court's holding in *Roe*, but consistent with *Vidmar*, that uninsured motorist coverage is personal and portable coverage which protects the insured from uninsured motorists in all instances.

In *Roe*, this court upheld the enforceability of a "drive other car" exclusionary clause, finding that such a clause was not inconsistent with the protective purposes of the state's uninsured motorist statute. *Roe* at 333, 340. The *Roe* decision was predicated on a mistaken characterization of uninsured motorist coverage as coverage which must be related to a particular vehicle. *Id.* at 338. This court subsequently recognized the personal and portable nature of uninsured motorist protection in *Vidmar* at 368–69. We stated:

---

position that uninsured motorist coverage is not personal to the insured, but rather is coverage that must be related to a specific vehicle. *Id.* at 338. This court stated:

"The court of appeals ignored the word 'thereunder' in the section. '[I]t is a basic rule of statutory construction that in construing statutes, effect is to be given, if possible, to each and every word, clause and sentence in a statute, and a construction that would result in any portion of a statute being superfluous should be avoided wherever possible.' *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 164, 288 N.W.2d 129 (1980). The word 'thereunder' is not surplusage; it must have a meaning in the section. It refers back to the '*automobile liability or motor vehicle liability policy*.' (Emphasis added.) Therefore, uninsured motorist coverage is required coverage in Wisconsin that must be related to a vehicle liability policy." *Roe* at 338.

The word "thereunder", which the court found critical, has been removed from the uninsured motorist statute under 1975 Wisconsin Laws, Ch. 375 (1975). Though the court of appeals found the elimination of the word "thereunder" editorial, we believe that in its absence, the basis upon which the court's decision was predicated in *Roe* is itself no longer present.

"[w]hile the accident must arise out of the 'ownership, maintenance or use' of the uninsured vehicle, the insured is covered regardless of the activity in which he is engaged at the time of the accident, be it driving a car, bicycling or walking. What the insured is doing when he is injured is irrelevant to his coverage so long as the injury is caused by an uninsured motorist." (Footnote omitted.) *Id.*

In spite of this recognition, the court of appeals in applying *Roe* to uphold the validity of the "drive other car" exclusion, precludes recovery for the insured just because the insured was in a different family vehicle at the time of the accident. The Supreme Court of Michigan when faced with similar fact situations considered the validity of a similar clause and stated: "[i]f insurers can, by such limitations, narrow the scope of their statutory obligation to provide uninsured motorist coverage, it would mean that no one must have portable uninsured motorist coverage." *Bradley* at 150. The court, in finding the exclusion void as violative of legislative policy, went on to state "if we were to read the statute as allowing an owned vehicle exclusion, we see no reason why uninsured motorist coverage could not be further limited to losses incurred in the vehicle to which the liability coverage specifically pertains, thus eliminating all portability." *Id.* at 151.

There is no requirement in the uninsured motorist statute that the insured be occupying an insured vehicle at the time of an accident. We conclude, as did the Supreme Court of Montana in voiding a similar "drive other car" exclusion, and consistent with our holding in *Vidmar*, that "there is no connection between the insured and the automobile listed on the policy. The named automobile merely illustrates that the person has satisfied the legal requirement of purchasing insurance and has uninsured motorist coverage. . . ." *Jacobson v. Implement Dealers Mut. Ins. Co.*, 640 P.2d 908, 912 (Mont.

1982). Thus, once uninsured motorist coverage is purchased, the insured, and his or her relatives insured for liability, have uninsured motorist protection under all circumstances. They are insured "when injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick."[2] *Bradley* at 152. *Accord Federated American Ins. Co. v. Reynes,* 563 P.2d 815, 818 (Wash. 1977).

On this basis, we are consistent with the majority of courts which have considered this question and are consistent with the language of the statute. We hold that "drive other car" exclusionary clauses are contrary to the legislative policy and express legislative intent embodied in this state's uninsured motorist and stacking statutes. *See Jacobson* at 911; *Cothern v. Emcasco Insurance Company,* 555 P.2d 1037 (Okla. 1976); *State Farm Automobile Insurance Co. v. Reaves,* 292 So. 2d 95 (Ala. 1974); *State Farm Mut. Auto. Ins. Co. v. Robertson,* 295 N.E.2d 626 (Ct. App. Ind. 1973); *Bradley; Kau v. State Farm Mut. Auto. Ins. Co.,* 564 P.2d 443 (Hawaii 1977); *Roberie. See generally* Widiss, *A Guide to Uninsured Motorist Coverage,* sec. 2.9 at 31 (1981).

We conclude that the question is not what this court believes ought to be public policy; that question has been resolved by the legislature. Despite the dissent's protestations to the contrary, we conclude that the legislature clearly and unambiguously expressed its intent to void reducing clauses which attempt to prohibit the stacking of multiple policy coverages of uninsured motorist protection issued by the same insurer to the same insured through the express enactment of Wisconsin's stacking statute. If we were to ignore this legislative

---

[2] It should be noted that in *Tahtinen,* the insured was a pedestrian at the time of his accident. *Tahtinen v. MSI Insurance Co., supra,* p. 160.

mandate, as the dissent suggests we ought to do, we would be engaging in the very judicial activism the dissent inaccurately accuses the majority of doing. It is up to the legislature, if it so desires, to change the stacking statute.[3]

*By the Court.*—The decision of the court of appeals is reversed.

STEINMETZ, J. (dissenting). The majority in *Tahtinen v. MSI Insurance Company,* 122 Wis. 2d, 158, 361 N.W.2d 673, filed this date, held sec. 631.43(1), Stats., requires stacking of uninsured motorist coverage. As I wrote in that case in a dissenting opinion, stacking of uninsured motorist coverage may be good public policy but that decision should be left to the legislature and if the legislature adopts stacking of uninsured motorist coverage, it should also set the limitations, if any. Uninsured motorist coverage is statutory protection created by the legislature and is not an area of liability originating in this court and therefore subject to change by this court. The majority opinion intrudes upon the legislative process and, therefore, I must dissent.

The holdings in *Roe v. Larson,* 99 Wis. 2d 332, 298 N.W.2d 580 (1980) and *Vidmar v. American Family Mut. Ins. Co.,* 104 Wis. 2d 360, 312 N.W.2d 129 (1981) have existed for four and three years, respectively, and now by this case, their rulings as to drive other car exclusions are being reversed. This is hardly *stare decisis,* but rather, it is an example of how a change in the membership of this court or a case with more egregious facts can bring about a change in the law. This transitoriness is exactly why the uninsured motorist coverage as created by the legislature should be developed by the legislature.

---

[3] It appears that the Ohio legislature did just that in explicitly enacting R.C. 3937.18(E). *See Karabin v. State Auto. Mut. Ins. Co.,* 10 Ohio St. 3d 163, 462 N.E.2d 403, 406 (1984).

The majority has converted uninsured motorist coverage to an accident policy with the only requirement for its application being a personal injury caused by an uninsured motorist. The majority ignores the clear meaning of sec. 632.32(4), Stats., which provides:

"(4) REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures *with respect to any motor vehicle* registered or principally garaged in this state *against loss resulting from liability* imposed by law for bodily injury or death suffered by any person *arising out of the ownership, maintenance or use of a motor vehicle* shall contain therein or supplemental thereto provisions approved by the commissioner." (Emphasis added.)

The requirements of sec. 632.32(4)(a), Stats.,[1] govern uninsured motorist coverage. The benefits of uninsured motorist coverage apply "with respect to any motor vehicle . . . against loss resulting from liability . . . *arising out of the ownership, maintenance or use of a motor vehicle.*" (Emphasis added.) Now by judicial fiat, uninsured motorist coverage applies while the insured is in-

---

[1] Sec. 632.32(4)(a), Stats., provides:

"(a) *Uninsured motorist.* 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident. The insurer may increase the coverage limits provided under this paragraph up to the bodily injury liability limits provided in the policy.

"2. In this paragraph 'uninsured motor vehicle' also includes:

"a. An insured motor vehicle if before or after the accident the liability insurer of the motor vehicle is declared insolvent by a court of competent jurisdiction.

"b. An unidentified motor vehicle involved in a hit-and-run accident.

"3. Insurers making payment under the uninsured motorists' coverage shall, to the extent of the payment, be subrogated to the rights of their insureds."

jured in an activity though not related to any of his vehicles and certainly not necessarily "arising out of the ownership, maintenance, or use of a motor vehicle." The only requirement is that the insured be injured by an uninsured motorist. In addition, the insured has uninsured motorist coverage even on cars he has not declared to his company (the *Roe* case). Now there is little reason for an insured to purchase more than one uninsured motorist coverage no matter how many cars or separate policies he owns unless he wants to insure against a catastrophic loss caused by an uninsured motorist. In that situation the insured will need the stacking and the corresponding financial benefit of having such coverage on more than one vehicle.

In *Vidmar,* 104 Wis. 2d at 369, we interpreted secs. 631.43(3) and 632.32, Stats., and upheld clearly stated "drive other car" exclusion clauses. We stated: "The insurer may, subject to the statutory requirements set forth in sec. 632.32, Stats., limit the scope of coverage, but as the drafter of the policy, it must use clear language when doing so." I believe *Vidmar* is an accurate interpretation of secs. 631.43(3) and 632.32 and is still good law.

The majority supports its decision with citations to other jurisdictions that have judicially accepted stacking of uninsured motorist policies.[2] It is worth stating that all but two of those states (Alabama and Washington) have some form of mandatory liability coverage so that the insurer's exposure for uninsured motorist stacking is far less than where there is no mandatory liability coverage as is the law in Wisconsin. When Montana in *Jacobson v. Implement Dealers Mut. Ins. Co.,* 196 Mont. 542, 548, 640 P.2d 908, 912 (1982), cited by the majority, states: "There is no connection between the insured and the automobile listed on the policy. The named automo-

---

[2] The states cited are: Ohio, Michigan, Louisiana, Florida, Montana, Washington, Oklahoma, Alabama, Indiana and Hawaii.

bile merely illustrates that the person satisfied the legal requirement of purchasing insurance and has uninsured motorist coverage;" it has *no* significance in Wisconsin where there is no legal requirement of compulsory automobile liability insurance on each licensed vehicle. *See also Bradley v. Mid-Century Ins. Co.,* 409 Mich. 1, 294 N.W.2d 141, 147 (1980). The public policy and legislative intent embodied in this state's uninsured motorist statute reflect the legislature's reluctance to enact some form of compulsory automobile liability insurance. Instead, the legislature has relied on proof of financial responsibility under certain circumstances (*see* ch. 344, Stats.). In this regard, I believe the majority has mischaracterized the public policy and legislative intent of this state and has improperly applied this characterization to uninsured motorist coverage.

The majority opinion cites among other cases, *Grange Mut. Cas. Co. v. Volkmann,* 54 Ohio St. 2d 58, 374 N.E.2d 1258 (1978), as authority for the statement that: "[T]he Welches are entitled to stack coverage under each of the policies, to the full amount of their damages, to the extent their damages do not exceed the aggregated policy limits of their uninsured motorist coverage." (P. 178.) It is worth pointing out that the Ohio legislature has enacted both compulsory automobile liability insurance and Ohio Rev. Code Ann. sec. 3937.18(E).[3] Two years after the *Grange Mut. Cas. Co.* case the Ohio legislature in R.C. 3939.18(E) made it unambiguously clear that insurance carriers may include provisions in auto-

---

[3] "Any automobile liability or motor vehicle liability policy of insurance that includes uninsured motorist coverage may include terms and conditions that preclude stacking of uninsured motor vehicle coverage." R.C. 3937.18 has subsequently been reamended effective June 23, 1982. Division (E) is now division (G) and the words "uninsured motorist coverage" were amended to read "coverages offered under division (A) of this section" to reflect the inclusion of underinsured motorist coverage in the section.

mobile insurance contracts which preclude stacking of uninsured motorist coverage. *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St. 3d 163, 462 N.E.2d 403, 406 (1984). This is entirely consistent with our holding in *Vidmar.*

I would wait for legislative development of uninsured motorist coverage and I will not participate in the judicial activism of the majority, no matter how desirable it may be. It is not a proper rationale in promulgating law by judicial fiat to state as the majority does that if the legislature does not agree with what this court has done, the legislature can change it.

I dissent.