# HERITAGE MUTUAL INSURANCE COMPANY, Plaintiff-Respondent,

v.

# ST. PAUL MERCURY INSURANCE COMPANY, Defendant-Appellant.†

Court of Appeals

*No. 87–0287. Argued July 30, 1987.—Decided August 26, 1987.*
(Also reported in 413 N.W.2d 664.)

† Petition to review filed. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Fellows, Piper & Schmidt* of Milwaukee, with oral argument by attorney *Richard E. Schmidt.*

On behalf of the plaintiff-respondent, there was a brief and oral argument by attorney *James W. Mohr, Jr.,* of Hartford.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.  This case involves the interpretation of "other insurance" clauses which require multiple insurers to bear proportionate liability for insured losses. Because we conclude that the pro rata share between insurers is based on the stated policy limits

rather than the coverage available to the insured through "stacking," we affirm.

Heritage Mutual Insurance Company (Heritage) and St. Paul Mercury Insurance Company (St. Paul) had issued automobile liability policies to Darryl Zernia. Heritage insured four of Zernia's vehicles under one policy, with uninsured motorist coverage of $25,000 per person. St. Paul insured one antique vehicle with uninsured motorist coverage of $50,000.

Both policies were in effect at the time Zernia's minor son, Scott, was killed by a hit-and-run driver. Settlement in the amount of $55,201.05 was reached between Zernia and both insurers. Heritage paid two-thirds of this amount and brought a contribution action against St. Paul which had paid one-third. The basis for contribution is the "other insurance" provision, present in both policies, calling for a pro rata share of damages based on total applicable limits.[1]

The trial court determined that Heritage's fair share of the settlement was one-third and ordered contribution from St. Paul in the amount of $18,400.35. The trial court reached this figure by comparing the stated $25,000 policy limit of Heritage to the stated $50,000 limit of St. Paul. St. Paul appeals.

---

[1]The Heritage policy provides:

If there is other similar insurance on a loss covered by this Part, we will pay our proportionate share as our limits of liability bear to the total limits of all applicable similar insurance.

The St. Paul policy provides:

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

St. Paul's position is that because Heritage insured four vehicles with a $25,000 limit, the insured would be able to "stack" those limits, if necessary, to $100,000.[2] Heritage agrees this far. However, St. Paul then contends that this "stacked" amount should also be the applicable limit in a contribution action between insurers. Therefore, St. Paul calculates the ratio between Heritage and itself as $100,000 to $50,000 (⅔ to ⅓) and concludes that Heritage should not have been awarded contribution.

We disagree with St. Paul's argument that this is a stacking case. Stacking is a legal creation designed to protect insureds. Section 631.43(1), Stats., refers to the "protection of the insured" and the "loss suffered by the insured."[3] The supreme court has determined that the legislature intended "to invalidate attempts by insurers to avoid their statutory obligations *to compensate the insured* up to the aggregated policy limits of the insured's coverage by enacting the

[2]"Stacking" of uninsured motorist coverages is mandated by statutory and case law. Sec. 631.43, Stats.; *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 162, 361 N.W.2d 673, 675 (1985).

[3]Section 631.43(1), Stats., provides:

> When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.

144

stacking doctrine." *Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis. 2d 172, 178, 361 N.W.2d 680, 683 (1985) (emphasis added). St. Paul has failed to cite any Wisconsin authority or public policy reasons which would require stacking as between insurers.

■

Because we conclude that this is not an appropriate case for stacking, we turn to the insurance contracts themselves to calculate each company's pro rata share. The construction of insurance policies is a question of law, reviewable without deference to the trial court. *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 450, 360 N.W.2d 33, 39 (1985).

The policies have very similar language regarding "other insurance." Heritage's policy states, "[W]e will pay our proportionate share as our limits of liability bear to the total limits of all applicable similar insurance." St. Paul's policy reads, "Our share is the proportion that our limit of liability bears to the total of all applicable limits." The question is: What is the limit of Heritage's policy—$25,000 or $100,000?

St. Paul contends that Heritage's coverage should be construed as four separate policies of $25,000 under *Burns v. Milwaukee Mutual Insurance Co.,* 121 Wis. 2d 574, 360 N.W.2d 61 (Ct. App. 1984). We note that the language adopted in *Burns* states:

> *From the insured's point of view,* this relationship [of one policy with two cars and premiums] is the same as having two policies ... .

*Id.* at 578, 360 N.W.2d at 64 (emphasis added).

Even if we did construe the coverage as four separate policies, the language of Heritage's policy maintains the $25,000 limit. The policy reads:

The limits of liability shown in the Declarations apply, subject to the following:

1. The limit for "each person" is the maximum we will pay as damages for bodily injury, including damages for care and loss of services, to one person in one accident.

2. Subject to the limit for "each person", the limit for "each accident" is the maximum we will pay as damages for bodily injury, including damages for care and loss of services, to two or more persons in one accident.

*We will pay no more than these maximums regardless of the number of vehicles described in the Declarations, insured persons, claims, claimants, policies or vehicles involved in the accident.*

(Emphasis added.)[4] We recognize that this language may be unenforceable *as against the insured,* sec. 631.43, Stats. but no Wisconsin case has held it unenforceable against another insurer.

■

We conclude that Heritage's limit of liability is as stated in the policy—$25,000. This limit does not change even if stacking is necessary to compensate the insured. *Welch* did not change the definition of policy limits; it merely allows the insured to stack "up to the

---

[4]We note that this language is similar to that in St. Paul's policy:

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
1. Covered persons;
2. Claims made;
3. Vehicles shown in the Declarations; or
4. Vehicles involved in the accident.

*aggregated policy limits." Welch,* 122 Wis. 2d at 178, 361 N.W.2d at 683 (emphasis added).[5]

[5]At oral argument, counsel for St. Paul expressed concern that our decision would result in a proportion which would change according to the number of "stacked" coverages necessary to compensate the insured. This uncertainty, it was argued, would result in fewer or delayed settlements. We do not perceive that the method which we set forth will result in uncertainty. Under our formulation of the rule, each "layer" of coverage will be exhausted before climbing further up the "stack." Whenever a layer is reached which is sufficient to fully compensate for the remaining damages, each insurer will be liable for its pro rata share based on the ratio of its stated limits to the total of all limits still available for coverage.

For example, assume three companies have provided X with uninsured motorist coverage. Company A insures one vehicle with a stated limit of $25,000. Companies B and C each insure two vehicles; B has a limit of $25,000, and C has a limit of $50,000. If damages to X are assessed at $109,000, each company pays its stated limit: A—$25,000; B—$25,000; C—$50,000, for a total payment of $100,000. Damages of $9000 remain, for which Companies B and C are still liable through stacking principles because B and C each insure two vehicles.

Each company's share of the remaining liability will be based on the ratio of the company's stated limits to the total applicable limits. The total applicable limits would be $75,000, the sum of B's and C's limits, as they are the only two companies still liable to the insured.

B's share will be based on the ratio of $25,000 to $75,000; C's share will be based on the ratio of $50,000 to $75,000. Therefore, B will pay $\frac{1}{3}$ of the remaining $9000 ($3000) and C will pay $\frac{2}{3}$ ($6000).

St. Paul's concern that uncertainty results in protracted settlement negotiations is misplaced. Insurers are free to do as Heritage did in this case, i.e., settle with the insured and bring a contribution action against the other insurer or insurers.

Heritage's policy limits are $25,000; therefore, its pro rata share of liability is one-third ($25,000 to $75,000). Because Heritage paid two-thirds, which was more than its fair share, it was entitled to contribution from St. Paul in the amount of $18,400.35.

*By the Court.*—Judgment affirmed.