STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance corporation, Plaintiff-Respondent,†

v.

CONTINENTAL CASUALTY COMPANY, a foreign insurance corporation, Defendant-Appellant.

Court of Appeals

*No. 92-2417-FT.  Submitted on briefs December 15, 1992.—Decided February 3, 1993.*

(Also reported in 498 N.W.2d 247.)

†Petition to review denied.

435

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James Samuelsen* and *Marjorie M. Greene* of *Godfrey, Braun & Hayes* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William J. Katt* and *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Nettesheim, P.J., Brown and Snyder, JJ.

NETTESHEIM, P.J.   In this appeal we hold that seven State Farm Mutual Automobile Insurance Company policies provide coverage for the accident. As a result, all seven State Farm policies shall be prorated with a single Continental Casualty Company (CNA) policy in determining the amount each insurer shall contribute to pay the injured claimant's agreed damages. We reverse the trial court's declaratory summary judgment which held that only one State Farm policy should be prorated.

## FACTS

### The Policies and the Accident

The facts are straightforward and are not disputed. At the time of the accident, Thomas Wieland was the

principal of Wieland Manufacturing which owned a fleet of six motor vehicles insured by CNA with liability limits of $500,000.

During October 1989, Thomas and his son, Carl, were en route to Wyoming on a hunting trip using a vehicle owned by Wieland Manufacturing and therefore covered under CNA's liability policy. The vehicle broke down in Minnesota and the mechanic hired to repair the vehicle reported that substantial repairs were needed. Wishing to continue their trip, Thomas and Carl rented the mechanic's personal vehicle.

On October 15, while Carl was operating the rented vehicle near Casper, Wyoming, he lost control of the vehicle, causing serious injuries to Thomas. The rented vehicle was uninsured.

At the time of the accident, Thomas was the named insured on seven separate State Farm automobile liability policies. Each policy insured a different vehicle owned by Thomas. Each policy carried limits of $100,000.[1]

Thomas made claims against both CNA and State Farm. Preserving their claims against each other, both insurers paid moneys in settlement of Thomas' claim: State Farm contributed $100,000; CNA paid the balance.[2] This declaratory action ensued.

### The Language of the Policies

The parties agree that the relevant provisions of the single CNA policy and the seven State Farm policies, although using different terminology, are functionally the same. All policies contain a "nonowned vehicle" pro-

---

[1] One State Farm policy named both Thomas and Carl as insureds.

[2] The parties do not advise us as to the amount of the settlement or the amount paid by CNA.

vision which affords coverage to Wieland Manufacturing under the CNA policy and to Carl under the State Farm policies. All policies also contain an "other insurance" provision which provides that the insurer is liable for only its share of the damages calculated by the proportion that the liability limit of the subject policy bears to the total of the liability limits of all applicable policies.

### The Trial Court's Ruling

The trial court adopted State Farm's argument that only one of its policies afforded coverage in this case. The court acknowledged that the question was "close" but ultimately concluded that the intent of State Farm and its insured, Thomas, was to contract for coverage under only one of the policies in a situation involving the operation of a nonowned vehicle by the insured. CNA appeals.

### ANALYSIS

State Farm does not dispute that the language of any one of its multiple policies affords coverage in this case. Rather, State Farm disputes the extent of that coverage, arguing that only one of its policies should contribute to the claim.

### Stacking in Proration Actions Between Insurers

State Farm makes a threshold argument that stacking or aggregating insurance coverage is not permitted in actions to prorate liability between competing insurers. State Farm argues that this is the holding of *Heritage Mutual Insurance Co. v. St. Paul Mercury Insurance Co.*, 141 Wis. 2d 141, 413 N.W.2d 664 (Ct. App. 1987).

In *Heritage*, St. Paul Mercury Insurance Company sought to quadruple the $25,000 policy limit in a Heri-

tage Mutual Insurance Company policy because the policy insured four vehicles. St. Paul argued that sec. 631.43(1), Stats.,[3] restricting the use of "other insurance" clauses, nullified Heritage's "other insurance" clause. Consequently, St. Paul contended that sec. 631.43(1) required that the Heritage policy limits be stacked.

We held that sec. 631.43(1), Stats., did not apply to disputes between insurers in a proration action. *Heritage*, 141 Wis. 2d at 144-45, 413 N.W.2d at 666. We so concluded because sec. 631.43(1) refers to "protection of the *insured*" and the "loss suffered by the *insured*." *Heritage*, 141 Wis. 2d at 144, 413 N.W.2d at 666 (emphasis added).

However, we did not say in *Heritage* (as State Farm implies) that stacking is prohibited as a matter of law in a proration action. Rather, we held that an insurer may not look to sec. 631.43(1), Stats., as authority for stacking the other insurer's multiple coverage. Instead, we look to the language of the respective insurance policies when determining each company's pro rata share. *See Heritage*, 141 Wis. 2d at 145, 413 N.W.2d at 666. We now perform this exercise in this case.

---

[3] Section 631.43(1), Stats., provides in relevant part:

**Other insurance provisions.** **(1)** GENERAL. When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions.

439

The construction of insurance contract provisions and statutes are questions of law which this court reviews *de novo*. *West Bend Mut. Ins. Co. v. Playman*, 171 Wis. 2d 37, 40, 489 N.W.2d 915, 916 (1992).

Here, State Farm issued seven separate liability insurance policies to Thomas. Each policy covers a different vehicle. For each policy, Thomas paid State Farm a separate premium for the separate risk assumed. Each policy states a separate and discrete policy limit of $100,000. These facts markedly set this case off from *Heritage* where there was but one policy insuring multiple vehicles with a single policy limit. *Heritage*, 141 Wis. 2d at 145–46, 413 N.W.2d at 666. We therefore conclude that all seven State Farm policies must contribute on a pro rata basis with the CNA policy to satisfy the injured party's claim.

This same reasoning sets this case off from *Agnew v. American Family Mutual Insurance Co.*, 150 Wis. 2d 341, 441 N.W.2d 222 (1989), where the supreme court rejected the injured party's stacking request. There, three separate policies insured three separate vehicles. One of the insured vehicles was involved in an accident. The court concluded that the two policies covering the vehicles not involved in the accident did not insure against a loss resulting from the vehicle specifically insured in the other policy. *Id.* at 349, 441 N.W.2d at 226.

Such is not the case here. The vehicle Carl was operating was a nonowned vehicle. Thus, the coverage question is governed by the nonowned provisions of the policies, not those provisions relating to coverage of the vehicle specified in the policy.

Our conclusion is supported by the Wisconsin Supreme Court's recent opinion in *Playman*, 171 Wis. 2d at 42-45, 489 N.W.2d at 917-18. There, a single insurance policy insured three vehicles, but the insured paid a separate premium for each vehicle. The policy provided for $300,000 underinsured motorist coverage for each vehicle. *Id.* at 40, 489 N.W.2d at 916.

The insured sought to stack the underinsured coverage. The insurer invoked its "other insurance" clause to limit its liability to the policy limits of $300,000. The supreme court ruled that the effect of the policy and its structure was to separately insure against the same loss. "Where an insured pays separate premiums, he or she receives separate and stackable uninsured motorist protections whether the coverage is provided in one or more than one policy." *Id.* at 41, 489 N.W.2d at 917 (quoting *Carrington v. St. Paul Fire & Marine Ins. Co.*, 169 Wis. 2d 211, 224, 485 N.W.2d 267, 272 (1992)). Thus, the court stacked the separate and individual policy limits of $300,000 on *each* of the three vehicles for a total liability of $900,000.[4]

Although we may not invoke sec. 631.43(1), Stats., under *Heritage*, this case otherwise is like *Playman*. In fact, it is stronger because here State Farm has issued separate policies reciting separate and discrete policy limits. These separate policies each insure the operation of a nonowned vehicle, a risk for which State Farm has been separately compensated by Thomas' separate premium payments.

---

[4] Although the stacking case law to date has addressed only uninsured and underinsured coverages, we see no basis in the law for limiting stacking to such instances. Coverage questions (stacking or otherwise) are properly determined by construing the language of the insurance contract(s) and applying the applicable law.

State Farm contends that stacking in this case produces an unreasonable result. State Farm reasons that if Carl had been driving an insured vehicle under one of the State Farm policies, then coverage in this case would be limited to the particular policy covering such vehicle. State Farm argues that it is illogical to allow multiple coverage under all seven policies because of the fortuity that Carl was operating a nonowned vehicle in this case.

While we agree that the multiple coverage triggered by the facts of this case was fortuitous, we disagree that this result is unreasonable or illogical when examining the language of the policies and the intent of the contracting parties. The resolution of any coverage dispute is necessarily governed by the terms of the policy as negotiated by the parties. Here, State Farm consciously chose to issue seven separate liability policies to Thomas. In each policy, State Farm promised to indemnify an insured for any liability resulting from the operation a nonowned vehicle. In exchange for these separately made promises, State Farm was paid seven separate premiums, each calculated to compensate for the risk. We see nothing unreasonable or illogical in our holding State Farm to its separate promises under such circumstances. The law of insurance coverage is not governed by the fortuity of events and whether stacking results. Rather it is governed by the contract of the parties.[5]

---

[5] Each policy's "other insurance" clause provides that the insurer's share of the liability is the proportion that the liability limit of the subject policy bears to the total of the liability limits of all applicable policies. Thus, the total of the liability limits under the multiple State Farm policies and the single CNA policy is $1,200,000 (CNA's $500,000 limits plus State Farms seven separate $100,000 limits). State Farm's seven separate $100,000 pol-

*By the Court.*—Judgment reversed.

icy limits total $700,000. Therefore, State Farm's pro rata share is 7/12th's of the damages. CNA's single policy limits is $500,000. Therefore, CNA's pro rata share is 5/12th's of the damages.