Karen C. MARTIN and Allen H. Martin, Plaintiffs-Appellants,†

CITY OF FRANKLIN, Involuntary-Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin Insurance Corporation, Defendant-Respondent,

Eric H. JOHNSEN, Henry Johnsen d/b/a Johnsen Construction, and ABC Insurance Company, the fictitious name for an unknown insurance company, Defendants.

Court of Appeals

*No. 00–2344. Submitted on briefs June 5, 2001.—Decided July 24, 2001.*

2001 WI App 178

(Also reported in 634 N.W.2d 127.)

† Petition to review granted 11-27-01.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William M. Cannon* and *Edward E. Robinson* of *Cannon & Dunphy, S.C.*, Brookfield.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Timothy J. Pike* and *Michael J. Wirth* of *Peterson, Johnson & Murray, S.C.*, Milwaukee.

Before Fine, Schudson and Curley, JJ.

¶ 1. FINE, J. Karen C. Martin and Allen H. Martin appeal from an order dismissing their claims against the America n Family Mutual Insurance Company. We affirm.

## I.

¶ 2. Karen Martin was injured in an automobile accident, when a pickup truck driven by Eric H. Johnsen and owned by his father, Henry Johnsen, struck the Martins' car. Eric Johnsen did not live with his father. He was driving the pickup truck with his father's permission. Indeed, Eric Johnsen used the pickup truck regularly, and it was available for his regular use.

¶ 3. Eric Johnsen owned a 1983 van, which was insured by American Family. The only issue presented by this appeal is whether the American Family policy on the van gives Eric Johnsen liability coverage in connection with his accident with the Martins while he was

driving his father's pickup truck. The trial court ruled that it did not, and we agree.[1]

## II.

¶ 4. This appeal involves both the interpretation of the insurance contract between American Family and Eric Johnsen, and also the application of a statute. Accordingly, our review is *de novo*. *See West Bend Mut. Ins. Co. v. Playman*, 171 Wis. 2d 37, 40, 489 N.W.2d 915, 916 (1992).

¶ 5. The American Family policy covering Eric Johnsen's 1983 van excludes from the scope of its liability-coverage any motor vehicles that are available for his regular use, other than the vehicles insured under that policy. This exclusion provides:

This coverage does not apply to:

> Bodily injury or property damage arising out of the use of any vehicle, other than your insured car, which is owned by or furnished or available for regular use by you or any resident of your household.

The Martins concede that if, in the words of their main brief on this appeal, "the 'regular use' exclusion is allowed to be given effect in this case," there is no coverage for Eric Johnsen's accident with the Martins under the American Family policy insuring Eric Johnsen's 1983 van.

¶ 6. The Martins contend that the exclusion is prohibited by WIS. STAT. § 631.43(1), which provides, as material here:

---

[1] American Family also provided liability coverage to Henry Johnsen for the pickup truck. American Family has tendered to the Martins the limits of that policy.

When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions.

They submit that both the 1983–van policy and his father's policy covering the pickup truck each promised to "indemnify Eric Johnsen against the same loss," namely "liability for bodily injuries caused by his negligent operation of his father Henry Johnsen's, Chevy pickup truck." We disagree.

■

¶ 7. It is true that Eric Johnsen is covered under Henry Johnsen's pickup-truck policy as a permissive user. It is also true that Eric Johnsen's 1983–van policy gives him liability coverage for damages he "is legally liable for because of bodily injury and property damage due to the use of a car or utility trailer."[2] But this does not mean, as the Martins argue, that Eric Johnsen's 1983–van policy promises to insure against the "same loss" as his father's policy on the pickup truck. Eric Johnsen's policy does not promise to insure him against a loss caused by his use of the pickup truck because it is a non-owned vehicle that was made available for his regular use. On the other hand, his father's policy promises to insure Eric Johnsen for losses caused by his

[2] The word "car" is defined to mean: "your insured car, a private passenger car, and a utility car." A "utility car" is defined to mean, as material here, "A car with a rated load capacity of 2,000 pounds or less, of the pickup ... truck type if not used in any business or occupation." American Family does not contend on appeal that Henry Johnsen's pickup truck was not a "car" as defined in Eric Johnsen's policy.

driving of his father's pickup truck because he was an authorized user of the truck. Thus, WIS. STAT. § 631.43(1) does not apply.

¶ 8. Our conclusion that WIS. STAT. § 631.43(1) does not apply here is supported by *Agnew v. American Family Mutual Insurance Co.*, 150 Wis. 2d 341, 441 N.W.2d 222 (1989). There, a young man was an insured under each of his father's three automobile policies—one policy for each of the father's three vehicles. *Id.*, 150 Wis. 2d at 343, 441 N.W.2d at 223–224. Paul G. Agnew was injured when his car collided with one of the insured's vehicles, which was then being driven by the son. *Id.*, 150 Wis. 2d at 343, 441 N.W.2d at 223. Agnew attempted to stack the liability coverages of the father's three policies, and thereby recover the combined limits of each of the policies. *Id.*, 150 Wis. 2d at 343–344, 441 N.W.2d at 224.

¶ 9. The insurance polices in *Agnew*, as does the insurance policy here, excluded from liability coverage "[b]odily injury or property damage arising out of the use of any vehicle, other than your insured car, which is owned by or furnished or available for regular use by you or any resident of your household." *Id.*, 150 Wis. 2d at 344–345, 441 N.W.2d at 224. Although, as here, the *Agnew* insurance policies promised to "pay damages an insured person is legally liable for because of bodily injury and property damage due to the use of a car," *id.*, 150 Wis. 2d at 347, 441 N.W.2d at 225 (internal quotes omitted), *Agnew* held that each of the policies did not promise to indemnify for the "same loss"; rather, each policy only promised to indemnify for the loss caused by the vehicle to which the policy was attached. *Id.*, 150 Wis. 2d at 349, 441 N.W.2d at 226. *See also Weimer v. Country Mut. Ins. Co.*, 216 Wis. 2d 705, 717, 575 N.W.2d 466, 471 (1998) ("The three policies at issue in *Agnew*

did not provide 'multiple protections against the same risk' because the three policies each covered separate vehicles and therefore insured against different losses.") (quoting *Agnew*, 150 Wis. 2d at 349, 441 N.W.2d at 226). *Weimer* noted that "[s]eparate policies insure against the same loss if 'the *risk of injury* that [one] policy covers does not increase with the number of policies that have been issued to cover *that person or property.*' " *Id.*, 216 Wis. 2d at 717, 575 N.W.2d at 471 (emphasis and bracketing by *Weimer*; quoted source omitted).

¶ 10. In this case, Eric Johnsen's 1983–van policy promised to indemnify him for liability resulting from his driving the 1983 van *and* those cars that were not available for his regular use. That risk of loss— excluding, as it did, coverage for his driving his father's pickup truck—was different than the risk of loss covered by his father's policy on the truck, which promised to provide liability coverage for accidents caused by an authorized driver of the pickup truck.

¶ 11. Our and *Weimer*'s reading of *Agnew* to require that the risk of the loss be the same for which each policy under consideration promises indemnification before Wis. STAT. § 631.43(1) kicks in is supported by both *Schult v. Rural Mutual Insurance Co.*, 195 Wis. 2d 231, 536 N.W.2d 135 (Ct. App. 1995) and *State Farm Mutual Auto Insurance Co. v. Continental Casualty Co.*, 174 Wis. 2d 434, 498 N.W.2d 247 (Ct. App. 1993), upon which the Martins rely. In *State Farm*, there were seven policies, each of which "promised to indemnify an insured for any liability resulting from the operation of a nonowned vehicle." *Id.*, 174 Wis. 2d at 442, 498 N.W.2d at 250. The insured under the seven policies was the driver of a borrowed car that was not available for his regular use. *Id.*, 174 Wis. 2d at 440, 498 N.W.2d at 249.

*State Farm* distinguished and did not apply *Agnew*, because in *State Farm* the loss for which each of the policies promised to indemnify was the same: damages caused by the driving of a non-owned vehicle. *Ibid.* Stated another way, the risk of loss covered by the policies was the same—the driving of a non-owned vehicle.

¶ 12. Similarly, *Schult* recognized that where each of three policies promised to indemnify the insured for liability resulting from the insured's driving of a non-owned vehicle, which, as in *State Farm*, was not also available for the insured's regular use, Wis. Stat. § 631.43(1) permitted stacking because the loss protected against in each of the policies was the same. *Schult*, 195 Wis. 2d at 238, 536 N.W.2d at 138 ("For the purposes of § 631.43(1), a determination of whether an insured may stack coverage turns not on the number of policies purchased, but on the number of premiums paid for coverage for a particular loss."); *Id.*, 195 Wis. 2d at 243, 536 N.W.2d at 140 ("Rural's duty to provide liability insurance turns on the fact that [the insured] was driving a non[-]owned vehicle, not that he was driving a covered vehicle."). Although the Martins focus on the fact that in both *State Farm* and *Schult* the damages were caused by the insured's driving of a non-owned vehicle, in neither case, as we have seen, was the non-owned vehicle available for the insured's regular use. Thus, neither *State Farm* nor *Schult* applied Wis. Stat. § 631.43(1) to invalidate an insurance-policy exclusion that removed from the liability coverage afforded by that policy a loss caused by an insured driving a non-owned car which was available for his or her regular use. Indeed, the Martins do not point to any reported case where § 631.43(1) has invalidated such an exclusion.

393

¶ 13. The closest the Martins can come in support of their argument that Wis. Stat. § 631.43(1) invalidates the exclusion upon which this case turns is *Welch v. State Farm Mutual Automobile Insurance Co.*, 122 Wis. 2d 172, 361 N.W.2d 680 (1985), and its progeny, which invalidated attempts by insurance companies to prevent stacking of uninsurance and underinsurance coverages. Both *Welch* and *Tahtinen v. MSI Insurance Co.*, 122 Wis. 2d 158, 361 N.W.2d 673 (1985), which were released on the same day, applied § 631.43(1) to permit stacking of uninsured-motorist coverages because both decisions recognized that the statute was enacted specifically by the legislature to overturn prior court decisions that did not permit such stacking. *Tahtinen*, 122 Wis. 2d at 162–164, 361 N.W.2d at 676; *Welch*, 122 Wis. 2d at 176–178, 361 N.W.2d at 682–683. Moreover, as in *State Farm/Continental* and *Schult*, where, as we have seen, the risk of loss for which each of the policies promised indemnification was the same (the insured's driving of a non-owned car; non-owned car not available for insured's regular use), the risk of loss in the uninsured/underinsured cases for which each of the policies promised indemnification was also the same (injury by either an uninsured or underinsured motorist).

¶ 14. The general rule is that a policy exclusion helps set the scope of the coverage. *Bortz v. Merrimac Mut. Ins. Co.*, 92 Wis. 2d 865, 871, 286 N.W.2d 16, 19 (Ct. App. 1979) (" 'In an insurance policy, an exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed.' ") (quoted source omitted). Neither *Welch* nor its brood has ever been applied to the situation presented by this appeal to invalidate a perfectly reasonable exclusion on

liability coverage, and we decline to so extend them here. As *Agnew* cogently noted:

> The purpose of the drive-other-car provision is to enable the insurer to insure the policyholder (and the relative residing in his or her household) against liabil- . ity incurred by the occasional or incidental use of cars not specified in the policy and to exclude liability by reason of the potential or actual habitual use of other vehicles owned by the policyholder, which would increase the risk of the insurer without a corresponding increase in the premium. This court has previously recognized that the purpose of the drive-other-car provision is to prevent a policyholder from insuring all the cars in one household by taking out just one policy and paying only one premium.

*Id.*, 150 Wis. 2d at 350, 411 N.W.2d at 226. Here, the Martins seek advantage of insurance coverage for which neither Eric Johnsen nor his father paid. The trial court correctly rejected their arguments.

*By the Court.*—Order affirmed.

¶ 15. SCHUDSON, J. (*dissenting*). All agree that if the "regular use" exclusion in Eric Johnsen's policy applies, then the $100,000 coverage under his American Family policy would not be available to supplement the $150,000 paid under his father's American Family policy for Karen Martin's injuries. All agree that whether the "regular use" exclusion precludes such coverage depends on whether it is trumped by Wis. Stat. § 631.43(1), which provides, in part:

> When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indem-

395

nification promised by the policies if there were no "other insurance" provisions.

All agree that Eric Johnsen is "an insured" under both his and his father's policies. And, on the strength of the interpretation the Martins present in their careful navigation of the case law, it is relatively clear that a "regular use" exclusion is an " 'other insurance' provision[]" encompassed by the statute.

¶ 16. Thus, the majority correctly concentrates on the pivotal issue in this appeal: whether Eric Johnsen's policy and his father's policy "promise[d] to indemnify an insured against the same loss." *See* WIS. STAT. § 631.43(1). If not, the "regular use" exclusion of Eric Johnsen's policy applies, precluding coverage under his policy. If so, however, the "regular use" exclusion does not apply because it violates the statute by "reduc-[ing] the aggregate protection of [Eric Johnsen] below the lesser of . . . the total indemnification promised by the policies if there were no 'other insurance' provision[]."

¶ 17. The parties' briefs bravely wade through the case law and offer arguable interpretations supporting their respective positions. The majority has analyzed much of that law and provided a plausible interpretation. American Family and the majority, however, rely heavily on *Agnew v. American Family Mutual Ins. Co.*, 150 Wis. 2d 341, 441 N.W.2d 222 (1989). But *Agnew* is significantly distinguishable.

¶ 18. In *Agnew*, the insured's father had purchased three American Family auto insurance policies—one policy for each of three vehicles he owned. *Id.* at 343. Here, by contrast, the insured and his father each had purchased one American Family auto insurance policy—each policy for his own vehicle. In *Agnew*,

396

the plaintiff seeking coverage was attempting to aggregate coverage of the insured, who had not purchased any policy, under the insured's father's three policies. *Id.* at 342–43. Here, by contrast, the plaintiffs seeking coverage (the Martins) are attempting to aggregate coverage of the insured (Eric Johnsen), who had purchased a policy, under the insured's own policy for his own vehicle. These distinctions, I believe should warn us away from any conclusion anchored in *Agnew*.

¶ 19. Similarly, while the other cases on which the parties rely include passages that may be interpreted to support their arguments, all are factually and, I think, significantly distinguishable. *See, e.g., Weimer v. Country Mut. Ins. Co.*, 216 Wis. 2d 705, 575 N.W.2d 466 (1998). And while the majority's interpretation of the additional case law is plausible, it is, I believe, far from conclusive. Thus, it appears that no case law really resolves this fair debate.

¶ 20. Therefore, I go 'back to basics'—the facts, the insurance policy, and the statute. Doing so, I reduce this case, perhaps all too simply, to this:

(1) Eric Johnsen was an "insured" under both policies.

(2) Both policies insured Eric Johnsen against loss, which in this case was, under WIS. STAT. § 631.32(1), the "same loss"—liability for the injuries suffered by Karen Martin.

(3) The "regular use" exclusion of Eric Johnsen's policy was " 'other insurance' " under the statute, as interpreted by the case law.

(4) Application of the "regular use" exclusion would "reduce the aggregate protection of the insured below . . . the total indemnification promised by the policies if there were no 'other insurance' provisions."

(5) Therefore, the "regular use" exclusion does not apply to reduce Eric Johnsen's coverage for the injuries the Karen Martin sustained.

¶ 21. This conclusion does not violate any of the public policy concerns so apparent in *Agnew* and several of the other cases on which American Family relies. This reason is clear: Eric Johnsen bought insurance and would be receiving no more than the coverage for which he paid, under the terms of his policy and by operation of WIS. STAT. § 631.43(1).

¶ 22. The majority, echoing *Agnew*, warns that " 'the purpose of the drive-other-car provision is to prevent a policyholder from insuring all the cars in one household by taking out just one policy and paying only one premium.' " Majority at ¶ 14 (quoting *Agnew*, 150 Wis. 2d at 350). But, as I have pointed out in distinguishing this case from *Agnew*, that simply is not the situation in this case. Moreover, as the Martins explain:.

What American Family fails to recognize is that a ruling in the Martins['] favor will not result in all "regular use" exclusions being declared invalid. Section 631.43, . . . as a result of a 1995 amendment, specifically allows insurers to "exclude, limit or reduce coverage under s. 632.32(5)(b), (c) or (f) to (j)." Section 632.32(5)(j), . . . in turn, specifically authorizes "regular use" exclusions to preclude coverage under a policy for losses resulting from the use of a motor vehicle that:

1. Is owned by the named insured, or is owned by the named insured's spouse or a relative of the named insured if the spouse or relative resides in the same household as the named insured.

2. Is not described in the policy under which the claim is made.

> 3. Is not covered under the terms of the policy as a newly acquired or replacement motor vehicle.

A ruling in the Martins['] favor will thus only invalidate "regular use" exclusions in those rare situations, as here, where a person is operating a nonowned vehicle or a vehicle not owned by a resident of the household. Thus, this Court will not be opening any "Pandora's Box" by ruling in the Martins' favor on appeal.

¶ 23. The majority concludes that "the Martins seek advantage of insurance coverage for which neither Eric Johnsen nor his father paid." Majority at ¶ 14. I disagree. The Martins, who have sustained injuries costing more than the $150,000 provided by the American Family policy *for which Eric Johnsen's father paid,* are seeking coverage for their injuries by aggregating the additional $100,000 provided by the American Family policy *for which Eric Johnsen paid.* By operation of WIS. STAT. § 631.43(1), they are entitled to gain that additional coverage under Eric Johnsen's policy.

¶ 24. Therefore, while acknowledging that the majority's interpretation of the case law may have merit, I conclude that this case presents an unprecedented circumstance that properly casts us back to the facts, the policies, and the dispositive statute. Analyzing them in a simple, literal and linear manner, and recognizing that the circumstances here clearly are *not* those against which *Agnew* warned, I respectfully dissent.