Karl J. PARKS, Jr. and Carol Parks, Plaintiffs-Appellants,

v.

Thomas E. WAFFLE and American Family Mutual Insurance Company and Family Health Plan, Defendants-Respondents.†

Court of Appeals

*No. 86–0870. Submitted on briefs February 11, 1987.—Decided March 4, 1987.*

(Also reported in 405 N.W.2d 690.)

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Sheryl A. Haarmann Cahn* of *Podell, Ugent & Cross, S.C.* of Milwaukee.

For the defendants-respondents the cause was submitted on the brief of *Craig A. Christensen* of *Peterson, Johnson & Murray, S.C.* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   The issue in this appeal is whether the Wisconsin Supreme Court's holding in *Welch v. State Farm Mut. Auto. Ins. Co.*, 122 Wis. 2d 172, 361 N.W.2d 680 (1985), that uninsured motorist coverage is "personal and portable" applies in a situation where the claimant is operating an uninsured vehicle and makes a claim under an uninsured motorist provision in a policy covering a vehicle not involved in the accident. We conclude the *Welch* language governs this case and reverse the summary judgment granted to American Family Mutual Insurance Company (American Family).

On September 10, 1982, Karl J. Parks, Jr. (Parks) was injured when his uninsured motorcycle was involved in an accident with an automobile being operated by Thomas E. Waffle who was also uninsured. Although the cycle was not insured, Parks owned two other automobiles, both of which were insured by American Family under separate policies. Both policies provided uninsured motorist protection to Parks.

Parks and his wife made claim against American Family under the uninsured motorist provisions of each policy. American Family moved for summary judgment, contending that the policies' respective "drive other car" provisions operated to exclude

coverage to Parks. The trial court agreed and dismissed the Parkses' complaint. The Parkses appeal.

Both American Family policies contained an exclusion which provided that uninsured motorist coverage would not apply to bodily injury resulting to a person "[w]hile occupying ... a motor vehicle that is not insured under this Part, if it is owned by you or a relative." Parks contends that the Wisconsin Supreme Court's language and holding in *Welch* invalidates these "drive other car" exclusions.

A motion for summary judgment can be used to address issues of insurance policy coverage. *Germanotta v. National Indem. Co.,* 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984). The record as made on the motion for summary judgment in this case reveals that there is no material issue of fact in dispute. The only issue presented to the trial court was the legal question as to the construction of the exclusionary clauses in American Family's policies. The interpretation of an insurance contract presents a question of law. *Katze v. Randolph & Scott Mut. Fire Ins. Co.,* 116 Wis. 2d 206, 212, 341 N.W.2d 689, 691 (1984). When reviewing a summary judgment determination, we will reverse where the trial court has incorrectly decided a legal issue. *Germanotta,* 119 Wis. 2d at 297, 349 N.W.2d at 735.

There is no question that the language of the supreme court in *Welch* is sufficiently broad to accommodate Parks' argument:

> This "drive other car" exclusion serves to prohibit stacking of uninsured motorist benefits against the same insurer, and is therefore prohibited by sec. 631.43(1), Stats.
>
> . . . .

Thus, the legislature mandated that insurers were not permitted to relieve themselves of liability in a situation where an insured had other uninsured motorist coverage available to him or her when that coverage by itself was insufficient to indemnify the insured to the full extent of his or her loss up to the available policy limits.

. . . .

... We conclude ... that uninsured motorist coverage is personal and portable coverage which protects the insured from uninsured motorists *in all instances.*

*Welch,* 122 Wis. 2d at 176–79, 361 N.W.2d at 682–84 (emphasis added).

The facts of *Welch,* however, carry a potentially important distinction from those here. In *Welch,* the claimant was operating a vehicle which was insured by the insurer. The issue in *Welch* was whether the "drive other car" provision in a second policy carried by the claimant on another vehicle not involved in the accident could, in light of sec. 631.43(1), Stats., operate to prohibit stacking the uninsured motorist coverage under the two policies.[1] The supreme court concluded it did not.

---

[1]Section 631.43(1), Stats., provides:

When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.

Here, the issue is coverage—not stacking. Parks was not operating a vehicle insured by American Family. Yet, under *Welch* and sec. 631.43(1), Stats., he seeks to invoke uninsured motorist coverage provided by American Family on two other vehicles, neither of which was involved in the accident. Noting these distinctions, but also noting the breadth of the *Welch* language, we certified this case to the Wisconsin Supreme Court inquiring whether the court intended its holding in *Welch* to extend to the present fact situation. The supreme court, however, declined to accept this case on certification.

American Family makes a persuasive argument that applying the *Welch* rule to this case undermines the statutory purpose behind sec. 632.32(4), Stats., which appears to condition uninsured motorist protection upon the procuring of liability protection.[2] Here,

---

[2]Section 632.32, Stats., provides in part:

**Provisions of motor vehicle insurance policies.** (1) SCOPE. Except as otherwise provided, this section applies to every policy of insurance issued or delivered in this state against the insured's liability for loss or damage resulting from accident caused by any motor vehicle, whether the loss or damage is to property or to a person.

. . . .

(4) REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

(a) *Uninsured motorist.* 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident. The insurer may increase the coverage limits provided under this

of course, Parks carried no liability insurance on the motorcycle. In addition, American Family makes a convincing public policy argument contending that the application of *Welch* to this case would encourage individuals to purchase but one automobile insurance policy, operate numerous other vehicles with no liability insurance, yet remain secure in the knowledge that they would be covered if involved in an accident with an uninsured motorist. This, reasons American Family, runs counter to the public interest which seeks to assure that *all* motor vehicles are covered by liability insurance.

In addition, we note that the application of *Welch* to this case also arguably runs afoul of the rule of construction for exclusionary clauses. Such clauses are tested not by what the insurer intended its words to mean but rather by what a reasonable person in the position of an insured would have understood the words to mean. *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 263, 371 N.W.2d 392, 394 (Ct. App. 1985). We have little difficulty in concluding that the language of the exclusionary clauses here readily conveys to the reasonable insured that uninsured motorist protection does not apply to an uninsured vehicle being operated by the insured.

Nonetheless, the language of *Welch* is sufficiently broad so as to govern this case. We are reluctant to refrain from applying the rule in the face of such language, particularly where the supreme court has declined the opportunity to disavow it.[3] In addition, we

paragraph up to the bodily injury liability limits provided in the policy.

[3]By making this observation, we emphasize that we draw no inference regarding the merits of this case from the supreme

are powerless to fashion a ruling which would effectively overrule or limit a supreme court decision which appears to govern the question. The wisdom of *Welch,* as it must be applied here, is not of our making and its undoing is not our function or privilege. *See State v. Grawien,* 123 Wis. 2d 428, 432, 367 N.W.2d 816, 818 (Ct. App. 1985).

Although the case here presents the very state of affairs anticipated and decried by the dissent in *Welch, see Welch,* 122 Wis. 2d at 183–84, 361 N.W.2d at 685–86 (Steinmetz, J., *dissenting*), the *Welch* majority concluded that any unfairness resulting from the court's interpretation of the stacking statute was for the legislature to correct.

*By the Court.*—Judgment reversed and cause remanded.

---

court's decision to reject the certification. Such would be improper under *State v. Shillcutt,* 119 Wis. 2d 788, 806, 350 N.W.2d 686, 695 (1984). In *Shillcutt,* the supreme court said it was improper for the court of appeals to find reinforcement for its decision in the denial of the certification. *Id.* Here, we see no reinforcement for our holding in the denial of the certification because we never saw our holding as needing reinforcement by way of a denial of a certification or in any other form.

Our certification inquired of the supreme court whether it truly intended its language to apply in this type of fact situation. This certification was intended to offer the supreme court the opportunity to limit or reconsider *Welch,* not to give us reinforcement for our holding. As noted, our powers do not permit us to modify *Welch.* In this context then, we see nothing improper or contrary to *Shillcutt* by alluding to the denial of the certification.