ST. PAUL MERCURY INSURANCE CO., Plaintiff-Respondent,

v.

Louis C. ZASTROW, Defendant-Appellant.

Louis C. ZASTROW, Plaintiff-Appellant,

v.

ST. PAUL MERCURY INSURANCE CO., Defendant-Respondent.

Supreme Court

*Nos. 90-2370, 90-2371. Oral argument October 30, 1991.—Decided February 13, 1992.*

(Also reported in 480 N.W.2d 8.)

For the defendant-plaintiff-appellant, Louis C. Zastrow, there were briefs (in the court of appeals) by *William D. Mansell* and *Jerome A. Maeder, S.C.,* Wausau and oral argument by *Mr. Mansell.*

For the plaintiff-defendant-respondent, St. Paul Mercury Insurance Company, there was a brief (in the court of appeals) by *Douglas J. Klingberg, Steven M. Anderson* and *Ruder, Ware & Michler, S.C.,* Wausau and oral argument by *Mr. Anderson.*

SHIRLEY S. ABRAHAMSON, J.   This is an appeal from a judgment of the circuit court for Marathon County, Vincent K. Howard, Circuit Judge, declaring that Louis Zastrow is not entitled to uninsured motorist protection under an Antique Automobile Insurance Policy that St. Paul Mercury Insurance Company issued to cover Zastrow's antique and collector automobiles. The circuit court dismissed the actions with prejudice.[1] This court granted the St. Paul Mercury Insurance Com-

---

[1] In the first action, *St. Paul Mercury Insurance Co. v. Zastrow,* St. Paul brought an action for declaratory relief claiming that Caroline and Robert Zastrow were not covered by Louis C. Zastrow's antique and collector car insurance policy. The circuit court granted summary judgment declaring Zastrow was not entitled to uninsured motorist coverage.

Louis C. Zastrow brought a second action personally and as special administrator of the estates of Caroline and Robert Zastrow against St. Paul claiming that it failed to arbitrate its liability under the policy. The circuit court dismissed the action with prejudice.

The two actions were consolidated for consideration of declaratory relief and motions for summary judgment and for dismissal brought by both parties.

pany's petition to bypass the court of appeals. Section 808.05 and sec. (Rule) 809.60, Stats. 1989–90.

The issue this court must address is whether the St. Paul Antique Automobile Insurance Policy, covering specified antique and collector vehicles and limiting its liability coverage to users of the specified vehicles, can limit uninsured motorist coverage only to persons who occupy an insured antique or collector vehicle at the time of their injury. We conclude that the limitation of uninsured motorist coverage in this policy violates the uninsured motorist protection coverage mandated by the legislature under sec. 632.32(4)(a), Stats. 1989–90. We reverse the judgments of the circuit court declaring that Louis Zastrow is not entitled to uninsured motorist insurance coverage pursuant to the policy issued by St. Paul Mercury Insurance Company and remand the cause to the circuit court.

The relevant facts are not in dispute. On April 2, 1989, an uninsured motorist struck and killed Louis Zastrow's wife and son as the two walked along a road near the Zastrow home. The walk did not relate to the use of any motor vehicle owned by Louis Zastrow or the decedents.

Zastrow had purchased two automobile insurance policies. One policy, from MSI Insurance Co., is a standard comprehensive automobile insurance policy covering motor vehicles that Zastrow regularly used for highway transportation. The second policy, from St. Paul Mercury Insurance Co., is entitled Antique Automobile Insurance Policy, is specifically tailored for antique and collector vehicles, and insured Louis Zastrow's 29 antique and collector vehicles.

Both policies contain uninsured motorist coverage. Louis Zastrow received payment under the uninsured motorist coverage from the MSI Insurance Co. for the

deaths of his wife and son. The disagreement between the parties concerns Zastrow's claim for payment under the uninsured motorist coverage of the St. Paul policy.

St. Paul asserts it was able to offer its policy to Louis Zastrow at a premium substantially lower than that charged for the standard comprehensive automobile insurance policy because antique and collector vehicles are not driven on the highways with the frequency of regular automobiles and because the St. Paul policy affords different coverage for antique and collector vehicles than a standard comprehensive automobile insurance policy.[2] To take advantage of these reduced premiums, the policyholder of the Antique Automobile Insurance Policy had to meet several requirements. First, Zastrow needed to have insurance covering the vehicle he used for ordinary highway transportation. Second, the St. Paul policy does not cover loss or damage if the annual mileage exceeds 2,500 miles per year. Third, the antique or collector vehicles could not be used for regular transportation, such as to or from work, school or shopping, for advertising or commercial enterprise, or for racing events, rallies, or other timed events. Finally the vehicles could not be altered in any way, such as to look like hot rod or customized show cars.[3]

---

[2]In an affidavit dated July 6, 1990, Mary Radford, regional marketing manager for the personal lines division of St. Paul Fire & Marine Insurance Co., stated that if Zastrow sought $100,000 of uninsured motorist coverage under St. Paul's standard automobile insurance policy for his 29 antique cars, he would have to pay $1,160 in annual premiums. Under the special Antique Automobile policy, however, Radford calculated that Zastrow would pay only $15 in annual premiums for $100,000 coverage.

[3]These restrictions are similar to restrictions the legislature has placed on owners of registered antique or collector automobiles. The Wisconsin legislature has recognized special classifica-

The St. Paul policy, unlike a standard comprehensive automobile insurance policy, limits the liability coverage of the policyholder or any family member to injuries resulting from the ownership, maintenance, or use of a covered vehicle and limits uninsured motorist coverage to occupants of an insured vehicle. In other words, the St. Paul policy does not insure the policyholder or his or her relatives against liability and does not indemnify the policyholder or his or her relatives against loss inflicted by an uninsured motorist unless the policyholder or the relatives are somehow involved with an automobile covered by this antique automobile insurance policy. The St. Paul uninsured motorist coverage reads as follows:

INSURING AGREEMENT

A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

. . .

B. "Insured" as used in this part means:

1. Any person "occupying" "your covered auto."

2. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. above.

---

tions for antique and collector cars in secs. 341.265 and 341.266, Stats. 1989-90, and has provided reduced registration fees for antique and collector vehicles if the owner meets certain conditions, including limited use restrictions.

(pp. 3–4 of 7 of policy)[4]

The St. Paul policy should be contrasted with a standard comprehensive automobile insurance policy, which covers three classes of insureds for both liability and uninsured motorist purposes: (1) the named insured, designated insureds, and specified relatives of named insureds (not limited to ownership, maintenance, use, or occupancy of the insured vehicle); (2) occupancy insureds, that is, persons occupying an insured vehicle; and (3) derivative insureds, that is, persons legally entitled to recover damages because of the bodily injury suffered by one of the other two classes of insureds.[5] The St. Paul Antique Automobile Insurance Policy does not provide either liability or uninsured motorist coverage to the first class of insureds. The St. Paul policy provides uninsured motorist coverage only to the second class of insureds.

Because the injured persons in this case were pedestrians and were not occupying one of the covered antique or collector vehicles at the time of the injury, St. Paul asserts that it is not liable under the uninsured motorist

---

[4]The liability coverage of the St. Paul provides as follows:

    A.  We will pay damages for "bodily injury" . . . for which any "insured" becomes legally responsible because of an auto accident . . ..

    B.  "Insured" as used in this Part means:

    1.  You [the policyholder] or any "family member" for the ownership, maintenance or use of "your covered auto."

    2.  Any other person using "your covered auto."

    3.  For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

Page 1 of 7 of policy.

[5]2 *No Fault and Uninsured Motorist Automobile Insurance* sec. 24.10 at 24–5 (M. Bender, ed. 1991); Alan I. Widiss, 1 *Uninsured and Underinsured Motorist Insurance* sec. 4.1 at 59 (1990).

coverage of the policy. Zastrow argues, however, that St. Paul cannot restrict its uninsured motorist coverage for the policyholder or his relatives to those circumstances in which they occupy the covered antique or collector vehicles. Zastrow asserts that St. Paul's limitations on uninsured motorist protection for the policyholder and his relatives are void because they violate the uninsured motorist coverage mandated by the legislature under sec. 632.32(4)(a), Stats. 1989–90, and contravene the "stacking" provisions of sec. 631.43(1), Stats. 1989–90.[6]

Section 632.32(4)(a), Stats. 1989–90, requires every automobile insurance policy issued in this state to include uninsured motorist coverage. Section 632.32(4)(a), Stats. 1989–90, provides:

> **(4)** Required Uninsured Motorist and Medical Payments Coverages. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner.
>
> (a) *Uninsured motorist.* 1. For the protection of persons injured who are legally entitled to recover

---

[6]Zastrow also argues that the St. Paul policy violates sec. 632.32(6)(b), Stats. 1989–90, which prohibits an insurance company from excluding from coverage persons related by blood or marriage to the insured. Because we conclude that the policy limitations on uninsured motorist coverage do not apply to Zastrow, we conclude that the policy limitations do not apply to his wife and son. *See Hulsey v. American Family Mutual Insurance Co.,* 142 Wis. 2d 639, 648–49, 419 N.W.2d 288 (Ct. App. 1987) (insurance policy denying family members protection against injuries resulting from the negligence of an uninsured motorist is impermissible).

damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom . . ..

Although this statute establishes minimal requirements, like many state uninsured motorist statutes its language is very general. It does not, for example, state what class of persons the mandatory uninsured motorist coverage must protect. Section 632.32(4) does not expressly prohibit an insurance company from limiting uninsured motorist coverage to occupants of the motor vehicle for which the insurance policy was written. The courts have had to interpret the statute to determine the extent of coverage mandated by the uninsured motorist statute. In many cases across the country injured persons have, in a variety of fact situations, protested policy limitations on uninsured motorist coverage as contravening the public policy of the state established by the uninsured motorist statute.

Zastrow argues that the St. Paul policy linking uninsured motorist coverage to the occupancy of an insured vehicle contravenes this court's interpretation of the uninsured motorist statute as granting the insured and relatives of the insured personal and portable coverage. Zastrow further asserts that the coverage limitations in the St. Paul policy serve to prevent stacking of uninsured motorist benefits contrary to the intent and purpose of sec. 631.43(1), Stats. 1989-90. Section 631.43(1) allows stacking as follows:

(1) General. When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the

431

policies if there were no "other insurance" provisions
. . ..

Zastrow correctly asserts that this court has characterized uninsured motorist coverage in the standard comprehensive automobile insurance policy as "personal and portable coverage which protects the insured from uninsured motorists in all instances." *Welch v. State Farm Mutual Automobile Insurance Co.,* 122 Wis. 2d 172, 179, 361 N.W.2d 680 (1985).[7] The *Welch* case involved an insured who had two vehicles, both insured by separate State Farm comprehensive automobile insurance policies. Welch and other family members were injured while traveling in one of the vehicles. The issue in *Welch* was whether the insured and his family were entitled to collect uninsured motorist benefits from a policy that insured the vehicle not involved in the accident. The court concluded that the uninsured motorist statute does not require the uninsured motorist to occupy an insured vehicle at the time of an accident. Moreover, the court concluded that uninsured motorist coverage protects the insured and his or her relatives whether injured "in an owned vehicle named in the policy, in an unowned vehicle, on a motorcycle, on bicycle, whether afoot or on horseback or even on a pogo stick." *Welch,* 122 Wis. 2d at 181 (quoting *Bradley v. Mid-Century Ins. Co.,* 294 N.W.2d 141, 147 (Mich. 1980)). We wrote that "once uninsured motorist coverage is purchased, the insured, and his or her relatives insured for liability, have uninsured motorist protection under all

[7]The court first recognized the "personal and portable" nature of uninsured motorist coverage in *Vidmar v. American Family Mutual Insurance Co.,* 104 Wis. 2d 360, 368 & n.4, 312 N.W.2d 129 (1981), *overruled on other grounds, Welch,* 122 Wis. 2d at 178–79.

circumstances." *Welch,* 122 Wis. 2d at 181. We also concluded in *Welch* that the "drive other car" exclusions were contrary to the legislative policy and express legislative intent embodied in the state's uninsured motorist and stacking statutes. *Welch,* 122 Wis. 2d at 176.

*Welch* rests on the legislative policies underlying the uninsured motorist and stacking statutes. The legislature mandates uninsured motorist coverage to ensure a source of payment to persons injured by negligent, financially irresponsible motorists. The purpose of uninsured motorist coverage is, simply put, to assure that the injured person will be in the same position in the event of injury attributable to the negligence of the uninsured motorist as the insured would be if he or she were injured through the negligence of a motorist carrying liability insurance. *Nicholson v. Home Insurance Co.,* 137 Wis. 2d 581, 591, 405 N.W.2d 327 (1987). The stacking statute prevents insurers from avoiding liability under uninsured motorist coverage when the insured has multiple uninsured motorist coverages and more than one policy is required to indemnify the insured for the loss. Adhering to the legislative policy under the uninsured motorist statute and the stacking statute to grant maximum protection to the victim of an uninsured negligent motorist, this court and other courts have interpreted uninsured motorist coverage as person oriented, rather than vehicle oriented, and have not generally permitted limitations and exclusions in coverage.

Relying on the *Welch* case and its progeny, Zastrow argues that the St. Paul policy must provide uninsured motorist coverage to him and to his wife and son for accidents unrelated to their occupancy of a covered vehicle. Zastrow asserts that our cases require the insurer to cover the insured and his or her relatives against a negli-

gent uninsured motorist "under all circumstances" and therefore uninsured motorist coverage is personal, portable, and stackable.

In cases subsequent to *Welch,* the court of appeals has applied the principles established in *Welch* to different fact situations, holding that uninsured motorist coverage is personal and portable and striking down exclusions. For instance, in *Hulsey v. American Family Mutual Insurance Co.,* 142 Wis. 2d 639, 419 N.W.2d 288 (Ct. App. 1987), the plaintiff Jill Hulsey sought to recover uninsured motorist benefits from her father's insurance policy. She resided in her father's house and owned her own car. Her father's policy expressly excluded her from coverage unless she was occupying his insured car. The court of appeals concluded that this exclusion applied to liability coverage but was invalid with respect to uninsured motorist coverage. *Hulsey,* 142 Wis. 2d at 645–46 (citing *Welch,* 122 Wis. 2d at 177).

In *Parks v. Waffle,* 138 Wis. 2d 70, 405 N.W.2d 690 (Ct. App. 1987), the court of appeals applied *Welch* to allow recovery from an insured's two automobile insurance policies even though the insured was operating an uninsured vehicle when he was injured by an uninsured motorist. The court of appeals found persuasive the insurance company's argument that *Welch* should not apply to the facts of *Parks* because allowing the insured to recover would defeat the purpose behind the uninsured motorist statute, namely to condition uninsured motorist protection upon the procuring of liability protection to encourage people to purchase liability coverage. Nevertheless the court of appeals concluded that *Welch* governed the case and required the court to hold that the injured party could recover under his policies.

These cases support Zastrow's contention that uninsured motorist coverage in this antique automobile

liability policy must be personal and portable to the purchaser of the insurance and his or her relatives, that St. Paul's limiting uninsured motorist coverage in this policy to occupants of an insured vehicle makes the policy nonportable, nonpersonal, and nonstackable, and that the policy limitation is thus void because it violates the uninsured motorist and stacking statutes.

St. Paul contends, however, that this case differs from the prior cases because the insurance policies at issue in prior cases such as *Welch, Hulsey,* and *Parks* were standard automobile insurance policies pertaining to family-owned vehicles regularly used for transportation on the highway. In contrast, in this case Zastrow purchased a unique type of automobile insurance policy. The St. Paul policy does not cover a family-owned vehicle regularly used for transportation on the highway. The St. Paul policy is confined to vehicles which occasionally but not regularly take to the highway and which are used primarily for show, not transportation.

The St. Paul policy is designed to solve a problem that antique automobile collectors face, as the circuit court recognized. If all of Zastrow's vehicles were covered by a standard automobile insurance policy, Zastrow would be paying substantial insurance premiums for vehicles that he rarely uses on the highway. On the other hand, if he had no insurance on these vehicles, he could face the possibility of enormous losses if one of these vehicles were involved in an accident. St. Paul attempted to accommodate Zastrow's needs as well as the requirements of the uninsured motorist statutes. To accommodate Zastrow, St. Paul provided limited liability and uninsured motorist coverage at reduced rates for the numerous antique vehicles consistent with the limited use of the vehicles. To accommodate the statutory requirements, St. Paul included uninsured motorist cov-

erage in its policy and also required Zastrow to have a standard comprehensive automobile insurance policy that provides personal and portable uninsured motorist coverage.

Because the St. Paul policy provides insurance for special vehicles, St. Paul argues that its policy in this case, unlike a standard comprehensive automobile liability insurance policy, is appropriately vehicle oriented. St. Paul urges in effect that an exception to the portability of uninsured motorist coverage be made for the limited use antique vehicles involved in this case. St. Paul is apparently asserting that the limitations on uninsured motorist coverage provided in this special and limited insurance policy for special and limited use vehicles would not significantly subvert the underlying legislative purpose of ensuring that an injured person will be in the same position in the event of injury caused by the negligence of an uninsured motorist as the insured would be in the event of injury caused by the negligence of an insured motorist.

St. Paul attempts to bolster its argument that antique and collector vehicles should be given special considerations under the uninsured motorist statute by noting that the legislature has recognized antique and collector cars as a special class of vehicles and provided for special registration plates. *See* secs. 341.265 and 341.266, Stats. 1989–90. St. Paul does not explain, however, and we cannot explain, how the special registration laws demonstrate a legislative intent to treat these vehicles specially under the uninsured motorist statute.

We are not persuaded by St. Paul's argument. Section 632.32(4)(a) expressly requires uninsured motorist coverage in "every policy of insurance . . . that insures with respect to any motor vehicle registered . . . in this state." The cases have interpreted sec. 632.32(4)(a) as

requiring portable and personal uninsured motorist coverage. St. Paul cannot overcome the fact that its policy insures a motor vehicle registered in this state and driven on the highway yet offers restricted uninsured motorist coverage for the policyholder, who is ordinarily the named insured, and his specified relatives. The St. Paul policy is not portable and not personal. The St. Paul policy's limitations prevent Zastrow and his wife and son from stacking the uninsured motorist coverages afforded by his two policies to compensate for the entire loss caused by an uninsured motorist as the stacking statute envisions.[8]

Declaring the St. Paul policy valid would contravene our previous cases and the legislative purposes underlying the uninsured motorist statute. If limited uninsured motorist coverage is to be permissible for antique or collector cars or any other special or limited use vehicles, the legislature must provide it. We hold that the St. Paul automobile policy cannot, for purposes of uninsured motorist coverage, limit the coverage of Zastrow and his wife and son to the coverage accorded occupants of vehicles. This holding is mandated by the text of sec. 632.32(4)(a), which requires every policy to include uninsured motorist coverage, and the public policy underlying sec. 632.32(4)(a), which puts the injured

---

[8]As we have said previously, the uninsured motorist provision of the St. Paul policy treats Zastrow and his wife and son like occupants of vehicles who are not the named insured or relatives of the insured. In *Martin v. Milwaukee Mutual Insurance Co.*, 146 Wis. 2d 759, 433 N.W.2d 1 (1988), we held that a non-relative occupant of an insured car could not "stack" a second insurance policy covering a different car owned by the same named insured whose car was involved in the accident.

party in the same position as if the uninsured tortfeasor had been insured.

For the reasons set forth we reverse the judgment of the circuit court and remand the cause for further proceedings not inconsistent with this opinion.

*By the Court.*—The judgment of the circuit court is reversed and the cause remanded.

STEINMETZ, J. *(dissenting).* I respectfully dissent from the majority opinion by concluding that it has misinterpreted the law as applied to the facts. The very purpose of the special St. Paul Mercury insurance policy for antique and collector automobiles is to provide a premium substantially lower than that charged for a standard comprehensive automobile insurance policy, because antique and collector vehicles are not driven on highways with the frequency of regular automobiles.

To obtain a special policy from St. Paul Mercury Insurance Company for antique and collector automobiles, an individual is required to meet specific requirements. First, an individual must have an insurance policy covering a vehicle that is used for ordinary highway transportation.[1] This requirement assures coverage for the policyholder and the holder's family should they incur damages as the result of an incident involving an uninsured motorist. Second, the policy does not cover loss or damage if the mileage of the antique or collector vehicle exceeds 2,500 miles per year. Third, the covered vehicle must not be used for traveling to or from work, school or shopping, for advertising or commercial enterprises, or for racing, rallies, or other timed events. Finally, the covered vehicle must not be altered in any

---

[1] The standard policy may be obtained from any insurance company. The insured is not required to obtain a standard policy from the same company that the special policy is purchased.

way. For example, an owner cannot change the vehicle to look like a hot rod or customized show car.

St. Paul Mercury Insurance Company's special policy for antique or collector automobiles, unlike a standard comprehensive automobile insurance policy, limits liability coverage and uninsured motorist coverage to occupants of an insured vehicle. The only individuals who are protected under the policy for damages inflicted by an uninsured motorist are those individuals who are identified in the policy as the policyholder or the policyholder's relatives.

Because of the requirements and limitations outlined above, the premium cost for a special policy is lower than the cost of a standard policy. If Zastrow, the policy owner in this case, had purchased coverage for his 29 antique cars under a standard policy, the uninsured coverage would have cost $1,160 in annual premiums. Under the special policy provided by St. Paul Mercury Insurance Company, the same coverage for 29 cars was $435.

The statute the majority relies on is sec. 632.32(4)(a), Stats., which applies to "[e]very policy of insurance subject to this section . . .." The majority correctly states that sec. 632.32(4) does not indicate what class of persons the mandatory uninsured motorist coverage must protect. The majority opines that: "Section 632.32(4) does not expressly prohibit an insurance company from limiting uninsured motorist coverage to occupants of the motor vehicle for which the insurance policy was written." Majority op. at 431. However, then the court unjustifiably applies all of its recent pronouncements on uninsured motorist coverage as if the legislature had intended sec. 632.32(4) be applied to Zastrow's special policy.

Wisconsin has recognized special classifications for antique and collector cars in secs. 341.265 and 341.266, Stats., and has provided reduced registration fees for antique and collector vehicles if the owner meets certain conditions, including limited use restrictions.[2] The 29 cars in this case so qualify. The majority ignores sec. 341.226 in which the legislature treats registration of this class of automobiles differently. The majority fails to recognize that the policy before us is not subject to sec. 632.32. Section 632.32 applies to standard insurance policies—not special policies.

The court has found uninsured motorist coverage as person-oriented rather than vehicle-oriented. The policy Zastrow purchased is a special insurance policy designed for antique and collector automobiles. The very limited use of these automobiles does not subject them to the normal exposure or danger from uninsured motorists. These cars frequently are never driven on highways for fear of wear and tear or breakdown. In fact, owners often have the automobiles transported to and from shows on flatbed trucks.

The fact that the state provides for special registration and recognizes different classes of automobiles because of their use on Wisconsin highways is dispositive to this case. It illustrates that special insurance policies, such as the one in this case, are recognized by the legislature as being different from the standard policy and should therefore be treated differently.

---

[2]Section 341.265, Stats. discusses antique motor vehicles, registration, plates and use. Subsection (1) states in part:

> The vehicle shall only be used for special occasions such as display and parade purposes or for necessary testing, maintenance and storage purposes.

Section 341.266(1) discusses special interest vehicles, registration, plates and use.

I would affirm the Marathon county circuit court.

I am authorized to state that JUSTICES ROLAND B. DAY and WILLIAM G. CALLOW join this dissenting opinion.