Marvin RODEY, by his Guardian ad Litem, Robert J. Richardson, Plaintiff-Appellant,

v.

Paul STONER, Jr., Mrs. Paul Brock and Secura Insurance, a mutual co., Defendants-Respondents.†

Court of Appeals

*No. 93–0938. Submitted on briefs October 4, 1993.—Decided November 16, 1993.*

(Also reported in 509 N.W.2d 316.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ardell W. Skow* of *Doar, Drill & Skow, S.C.* of Baldwin.

On behalf of the defendant-respondent, Secura Insurance Company, the cause was submitted on the brief of *Roy S. Wilcox* of *Wilcox, Wilcox, Duplessie, Westerlund & Enright* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Marvin Rodey appeals a judgment denying his motion to compel discovery and granting summary judgment to the defendants, Paul Stoner, Jr., Mrs. Paul Brock and Secura Insurance (Secura).

Rodey was a passenger in his own vehicle, which was involved in a one-car accident. The only coverage on the accident vehicle was a liability policy issued by American Family. American Family offered, and Rodey accepted, the $50,000 policy limit in compensation for the loss he incurred.

At the time of the accident, Rodey lived with his mother and stepfather, Thomas Traxler. Traxler had an insurance policy through Secura that provided underinsured motorist (UIM) coverage for each of the four listed cars owned by Traxler. Rodey's car is not one of the four listed cars in Traxler's policies. However, it is not disputed that Rodey is an insured under these policies by virtue of his status as a resident relative. As an insured, Rodey argues, he is entitled to recover his uncompensated loss under the UIM provisions of those policies.

Secura denied Rodey coverage on two bases. First, Rodey's vehicle did not fit into the policy definition of "underinsured motor vehicle." Second, the drive-other-car exclusion contained in the policy denied Rodey coverage. The trial court agreed and granted summary judgment to Secura.

Rodey argues that the trial court erred by granting summary judgment because the underinsured motor vehicle definition and the drive-other-car exclusion are invalid under sec. 631.43, Stats. We conclude that summary judgment was inappropriate because under these undisputed facts the drive-other-car exclusion and the

underinsured motorist definition are invalid as a matter of law. Rodey also argues that the trial court erroneously exercised its discretion by denying his motion to compel discovery. Because our decision regarding summary judgment is dispositive, we reverse the judgment without addressing the motion to compel discovery.

A motion for summary judgment can be used to address issues of insurance policy coverage. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984). The record here reveals that there is no material issue of fact in dispute. The only issue is the legal question of the validity of the exclusionary clauses in Secura's policies. The interpretation of an insurance contract presents a question of law. *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212, 341 N.W.2d 689, 691 (1984). When reviewing a summary judgment determination, we will reverse where the trial court has incorrectly decided a legal issue. *Germanotta*, 119 Wis. 2d at 297, 349 N.W.2d at 735.

This case hinges on the interplay between the Secura policies, specifically, the underinsured motor vehicle definition and drive-other-car exclusion, and sec. 631.43, Stats. Section 631.43 states in part:

> (1) General. When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions.

312

The definition of "underinsured motor vehicle" under the policy states that an underinsured motor vehicle does not mean any vehicle "[o]wned or furnished or available for regular or frequent use by you, a relative or any other member of your household." The drive-other-car exclusion reads:

COVERAGE C-2 — UNDERINSURED MOTORISTS COVERAGE

. . . .

B. Exclusions.
 We do not cover *bodily injury* to a person:

 1. *Occupying* . . . a motor vehicle owned by . . . or available for regular or frequent use by you, a *relative* or any other person living in your household, for which insurance is not afforded under this Coverage.

Although we conclude that the policy language readily conveys that Rodey and his vehicle are not covered by the UIM provisions, sec. 631.43, Stats., and its legal history require us to conclude that under these facts the underinsured motor vehicle definition and drive-other-car exclusion are invalid. Rodey may therefore stack the policies of the nonaccident vehicles Traxler owns, under which Rodey is an insured, atop his policy.

We treat the "uninsured motor vehicle" definition the same as the drive-other-car exclusion in our analysis. The definition contains language very similar to the exclusion, and produces the same result. To treat the definition differently from the exclusion merely because it is couched in the definition section of the policy would be to exalt form over substance and would defeat the purpose of sec. 631.43, Stats.

The legal history leading to our conclusion is extensive. The first relevant case, *Welch v. State Farm Mut. Auto. Ins. Co.*, 122 Wis. 2d 172, 361 N.W.2d 680 (1985), involved an accident between the insureds' vehicle and an uninsured vehicle. The insureds, the Welches, had liability and uninsured coverage on their accident vehicle. In addition, the Welches had a policy on a nonaccident vehicle under which they were both insured and on which they had the same liability and uninsured coverage as the accident vehicle. The Welches contended that the uninsured motorist coverage on the nonaccident vehicle should be applied, in addition to the coverage on the accident vehicle, to the injuries they sustained in the accident. The insurer denied coverage based on a drive-other-car exclusion similar to the one involved here. The supreme court held that where there were two policies promising to indemnify the insured against the same loss, i.e. uninsured motorist coverage, the policy's drive-other-car exclusion was an attempt to avoid the sec. 631.43, Stats., prohibition of reducing clauses.

> The legislature clearly indicated its intent to invalidate attempts by insurers to avoid their statutory obligations to compensate the insured up to the aggregated policy limits of the insured's coverage by enacting the stacking doctrine. State Farm's inclusion of a "drive other car" exclusionary clause is such an attempt, and must therefore be invalidated. (Citations omitted.)

*Id.* at 178, 361 N.W.2d at 683.

Following *Welch* came a case where the accident was between two uninsured vehicles. *Parks v. Waffle*, 138 Wis. 2d 70, 405 N.W.2d 690 (Ct. App. 1987). Although the claimant's accident vehicle was not

insured, the claimant, Parks, was an insured under two other policies which provided uninsured motorist coverage. In *Parks,* we applied the rationale of *Welch* and concluded that because Parks had two policies that "promise[d] to indemnify an insured against the same loss," the drive-other-car exclusions within those policies violated sec. 631.43 and were therefore invalid. Consequently, we concluded that Parks was entitled to collect the uninsured motorist coverage of his two nonaccident vehicles for his injuries.

Subsequently, the supreme court has determined that there is no distinction between uninsured and underinsured motorist coverage when applying sec. 631.43, Stats. *See Wood v. American Fam. Mut. Ins. Co.*, 148 Wis. 2d 639, 647, 436 N.W.2d 594, 597 (1989); *West Bend Mut. Ins. Co. v. Playman*, 171 Wis. 2d 37, 42, 489 N.W.2d 915, 917 (1992). In both of these cases, the policy covering the accident vehicle and a policy on a nonaccident vehicle promised to indemnify the claimant against the same loss; that is, the policies on both the accident and nonaccident vehicles had underinsured motorist coverage. The supreme court determined that the exclusions in the policies violated sec. 631.43 and were therefore invalid. Consequently, the insured was allowed to stack them.

We are now in a position where the case law requires that we apply *Parks* in the underinsured situation. Like Parks, Rodey is insured under "2 or more policies [that] promise to indemnify the insured [Rodey] against the same loss." As a result, the drive-other-car exclusion and underinsured motor vehicle definition within the Secura policies, as used in this case, violate sec. 631.43, Stats., and are therefore inva-

315

lid. Rodey is thereby entitled to stack the underinsured motorist coverage of the nonaccident vehicles.

As with *Parks*, we conclude that we are mandated by the statute and its legal history to reach this conclusion. Again we recognize that there is a strong public policy argument against this result. Application of *Welch* and *Parks* to this case could encourage individuals or a family to purchase uninsured and underinsured motor vehicle coverage on two insurance policies, operate numerous other vehicles with insufficient or no insurance, yet remain secure in the knowledge that they would be covered if involved in an accident with an uninsured or underinsured motorist. "This . . . runs counter to the public interest which seeks to assure that *all* motor vehicles are covered by liability insurance." *Parks*, 138 Wis. 2d at 75, 405 N.W.2d at 692 (emphasis in original). Also pointed out in *Parks*:

> [W]e note that the application of *Welch* to this case also arguably runs afoul of the rule of construction for exclusionary clauses. Such clauses are tested not by what the insurer intended its words to mean but rather by what a reasonable person in the position of an insured would have understood the words to mean. *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 263, 371 N.W.2d 392, 394 (Ct. App. 1985). We have little difficulty in concluding that the language of the exclusionary clauses here readily conveys to the reasonable insured that uninsured motorist protection does not apply to an uninsured vehicle being operated by the insured.

*Id.*

Nonetheless, we cannot distinguish this case from *Parks*, and therefore must follow it. Neither the

316

supreme court nor the legislature has responded to *Parks*, and it is therefore still the controlling law.

One could argue that this case is governed by *Schwochert v. American Fam. Mut. Ins. Co.*, 139 Wis. 2d 335, 407 N.W.2d 525 (1987) (*Schwochert I*) and *Schwochert v. American Fam. Mut. Ins. Co.*, 172 Wis. 2d 628, 494 N.W.2d 201 (1993) (*Schwochert II*), but this case is easily distinguished. In *Schwochert*, the claimant had liability insurance on her accident vehicle and liability and underinsured coverage on a nonaccident vehicle. The court upheld the drive-other-car exclusion that prevented the insureds from stacking their policies. The key in *Schwochert* was that "there can be no stacking of underinsured motorist coverage where only one vehicle is insured for underinsured motorist coverage." *Schwochert II,* 172 Wis. 2d at 635, 494 N.W.2d at 203. In other words, there were not two policies promising to indemnify the insured for the same loss and the exclusion, therefore, was not contrary to sec. 631.43, Stats. On the other hand, in our case there are four vehicles insured for UIM coverage, albeit none of them was the accident vehicle.

We consider *Schwochert* to be indicative of where our case and *Parks* might be distinguishable from *Welch* and the other cases. In *Welch* and other applicable cases before *Parks*, the court compared the policies of nonaccident vehicles to that of the accident vehicle. That is, in the cases prior to *Parks*, the policy on the accident vehicle was one of the "2 or more policies [that] promise to indemnify an insured against the same loss." Section 631.43, Stats. In *Parks*, and now in this case, both of the policies required to invoke sec. 631.43

were policies covering non-accident vehicles.[1] However, again, because we cannot distinguish this case from *Parks* and neither the legislature nor the supreme court has addressed *Parks*, we are required to conclude that the lack of insurance on the accident vehicle is irrelevant when the insured has insurance on two other vehicles promising to indemnify the insured against the same loss.

Because we conclude that under the facts of this case the drive-other-car exclusion and underinsured motor vehicle definition are invalid as a matter of law, the issue of the motion to compel discovery is moot.

---

[1] It may be easier to understand the relationship of the insurance policies and sec. 631.43 in chart form. The policies which invoke sec. 631.43 are italicized.

| CASE | ACCIDENT VEHICLE | NONACCIDENT VEHICLE | RESULT |
|------|------------------|---------------------|--------|
| *Welch* | *liability & uninsured coverage* | *liability & uninsured coverage* | exclusion invalid & stacking |
| *Parks* | not insured | #1—*uninsured coverage* #2—*uninsured coverage* | exclusion invalid & stacking |
| *Playman* | *UIM coverage* | *UIM coverage* | exclusion invalid & stacking |
| *Schwochert* | liability | liability & UIM coverage | exclusion valid, so no stacking |
| *Rodey* | liability | #1—*UIM coverage* #2—*UIM coverage* #3—*UIM coverage* #4—*UIM coverage* | exclusion invalid & stacking |

*By the Court.*—Judgment reversed and cause remanded for further proceedings.